IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LINDA CLARK,

       Plaintiff,

   vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

       Defendant.
_____

Civil No. 04-1843-AS

FINDINGS AND RECOMMENDATION

ASHMANSKAS, Magistrate Judge:

    Claimant, Linda Clark, brings this action pursuant to the
Social Security Act (Act), 42 U.S.C. § 405(g), seeking judicial
review of the Social Security Commissioner's (Commissioner) final
decision.  The Commissioner denied Clark's claim for Disability
Insurance Benefits (DIB).  For the reasons set forth below, the
Commissioner's decision should be reversed and remanded for
further proceedings in accordance with this decision.

## PROCEDURAL BACKGROUND

Clark filed her application for DIB on July 19, 2002, alleging disability since March 31, 1995, due to depression, social problems and memory problems. Clark's application was denied initially and on reconsideration. On November 19, 2003, after a timely request for a hearing, Clark appeared and testified before an administrative law judge (ALJ). Clark was represented by counsel, David W. Hittle. At the ALJ's request, John B. Nance, Ph.D., appeared and testified as a medical expert. Gail Young, a vocational expert (VE), also appeared and testified.

On January 30, 2004, the ALJ issued a decision finding Clark not disabled, as defined in the Act, prior to her date last insured, December 31, 2001.[1] On November 2, 2004, the Appeals Council denied Clark's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 422.210.

---

[1] The relevant time period under review encompasses the period of time from March 31, 1995 (disability onset date), through December 31, 2001 (date last insured). The last insured date refers to the last day a claimant has insurance coverage for disability benefits. See Armstrong v. Commissioner of the Social Sec. Admin., 160 F.3d 587, 589 (9th Cir. 1998). In order to obtain disability benefits, a claimant must prove a disability existing prior to the last insured date. See id. (citing 42 U.S.C. § 423(c)).

**STATEMENT OF FACTS**

The medical records submitted in this case accurately set forth Clark's medical history as it relates to her claim for benefits. The court has carefully reviewed the extensive medical records submitted here, and the parties are familiar with the records. In addition, the Commissioner stipulates to the ALJ's summary of the medical and testimonial evidence. Accordingly, the details of those medical records will not be recounted here.

Clark was 54 years old at the time of the hearing; had completed high school; and had past relevant work experience as an electronics assembler, a machine operator and a care provider. Clark had not engaged in substantial gainful activity since March 1995.

At the 2003 hearing, Clark testified on her own behalf. Clark testified regarding her limitations, her daily activities and her past work experiences, including her assessment that she was "always down in the dumps, from the time I get up in the morning until I go to bed at night . . . . I mean I go through the motions of life, but it's not easy." Clark testified that she has been seeing doctors and psychiatrists all her life. Clark stated that sometimes she would remain in bed for up to a week at a time. When asked to explain why she would stay in bed for days at a time, Clark responded: "No friends. I just don't have a happy life."

Dr. Nance testified as a medical expert. He opined that Clark's mental impairments resulted in mild restriction of activities of daily living, moderate limitations in maintaining social functioning and marked limitations in concentration, persistence or pace and no episodes of decompensation.

Young testified, based on the <u>Dictionary of Occupational Titles</u>, that Clark's past relevant work in electronics assembly was classified as unskilled light work; factory projection line assembly was unskilled light work; and "senior citizen's care giver" was classified as semiskilled medium work. Based on the ALJ's hypothetical, Young opined that Clark would have the residual functional capacity (RFC) to return to her past relevant work as an electronics assembler.

The ALJ found that Clark met the disability insured status requirements of the Act on March 31, 1995, the alleged disability onset date, and she had sufficient quarters of coverage to remain insured only through December 31, 2001; the medical evidence established that her ability to work was limited by severe mental impairments, but she did not have an impairment or combination of impairments which meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4; Clark's statements regarding her impairments and their impact on her ability to work were not fully credible; she had a RFC to perform routine, repetitive work, but works best alone with little

public contact; and she retained the RFC to perform substantial gainful activity in her past relevant work as an electronics assembler. Accordingly, the ALJ found that Clark was not disabled under the Act because she retained the RFC to perform her past work.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; the court may not substitute its judgment for that of the Commissioner's. Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001)

To be found disabled under the Act, an individual must have a medically determinable physical or mental impairment of such

severity that he or she is not only unable to do his or her previous work but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See 20 C.F.R. §§ 404.1520, 416.920.

The initial burden of proof rests upon the claimant to establish disability.  Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. § 423(d)(1)(A).

The Secretary has established a five-step sequential process for determining whether a person is disabled.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920.  First the Secretary determines whether a claimant is engaged in "substantial gainful activity."  If so, the claimant is not disabled.  Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

In step two the Secretary determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the claimant is not disabled.

In step three the Secretary determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." <u>Id</u>.; <u>see</u> 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Secretary proceeds to step four. <u>Yuckert</u>, 482 U.S. at 141.

In step four the Secretary determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, she is not disabled. If she cannot perform past relevant work, the burden shifts to the Secretary. In step five, the Secretary must establish that the claimant can perform other work in the national economy. <u>Yuckert</u>, 482 U.S. at 141-42; <u>see</u> 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Secretary meets this burden, then claimant is deemed not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## DISCUSSION

Clark contends that the decision of the ALJ was not based on substantial evidence as required by 42 U.S.C. § 405(g), and the ALJ erred as a matter of law in denying her claim. Specifically, Clark argues that the Commissioner erred by: (1) omitting relevant evidence from the record when she failed to consider evidence submitted to the Appeals Council; (2) failing to develop the record fully; and (3) improperly rejecting the opinion of her treating physician. The court has considered these challenges to the

Commissioner's decision and, based on the grounds set forth below, has determined that there is not substantial evidence in the record to support the ALJ's finding that Clark was not disabled.

## I.    Evidence before the Appeals Council

Clark contends that the Commissioner erred by omitting relevant evidence from the record –- a Medical Source Statement from her psychiatrist, Dr. Suckow, dated September 24, 2004.  On October 6, 2004, Clark submitted this new Medical Source Statement to the Appeals Council for consideration.  In that Statement, Dr. Suckow indicated that Clark had "Moderate" limitations in her ability to understand, remember and carry out short, simple instructions.  He further indicated that she had "Marked" limitations in her ability to: understand, remember or carry out detailed instructions; make judgments on simple work-related decisions; interact appropriately with the public or coworkers; and respond appropriately to changes in a routine work setting. Finally, Dr. Suckow indicated that Clark had "Extreme" limitations in her ability to: interact appropriately with supervisors; and respond appropriately to work pressures in a usual work setting. Dr. Suckow stated that Clark "is a very dependent and needy person –- reacts to stress [with] anger –- not flexible unable to maintain concentration [and] pace."  Moreover, he stated that Clark's "ability to get alone with friends is very impaired" and she was

"unable to tolerate implied criticism as well as obvious criticism."

In its decision dated November 2, 2004, the Appeals Council acknowledged the receipt of the evidence, but stated that: "The [ALJ] decided your case through January 30, 2004. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before January 30, 2004." Clark contends that the relevance of this post-dated evidence is to show that she suffered a disabling condition, as previously assessed by Dr. Suckow, that continued well past the date of the ALJ's decision. As such, Clark argues, the court should credit Dr. Suckow's September 2004 assessment and remand this case for a finding of disability and payment of benefits.

Although this evidence was not considered by the ALJ, it was made part of the Administrative Record by the Appeals Council, and the court may consider it in reviewing Clark's claims to determine whether the ALJ's decision is supported by substantial evidence and free of legal error.[2] Ramirez v. Shalala, 8 F.3d 1449, 1451-1452 (9th Cir. 1993). While the court may properly consider the additional evidence presented to the Appeals Council, the court

---

[2] Although Dr. Suckow's September 2004 Medical Source Statement was not included in the Administrative Record submitted to the court, Clark submitted it as an attachment to her Opening Brief. As such, Dr. Suckow's statement will be considered by the court and becomes part of the Administrative Record in this case. See, e.g., Ramirez v. Shalala, 8 F.3d 1449, 1451-1452 (9th Cir. 1993).

will not find on the basis of evidence that the ALJ has had no opportunity to evaluate that Clark is entitled to benefits as a matter of law.  <u>Harman v. Apfel</u>, 211 F.3d 1172, 1180 (9th Cir. 2000).  The appropriate remedy here is to remand this case to the ALJ for consideration of this after-acquired medical evidence.  <u>Id</u>.

The court notes, however, that the Medical Source Statement evidence is relevant as it appears to establish that Clark suffered from a disabling condition, after her date of last insured, such that a medical expert must be called to assess the onset date.  <u>See</u>, <u>e.g.</u>, <u>DeLorme v. Sullivan</u>, 924 F.2d 841 (9th Cir. 1991); <u>Armstrong v. Commissioner</u>, 160 F.3d 587 (9th Cir. 1998); Social Security Regulations 83-20.  In both <u>DeLorme</u> and <u>Armstrong</u>, there was evidence indicating that the claimant was disabled at some point after the date last insured.  <u>DeLorme</u>, 924 F.2d at 844; <u>Armstrong</u>, 160 F.3d at 590.  Consequently, the question of when the claimant first became disabled was at issue in both cases.

The record demonstrates that Clark suffered some impairments prior to December 31, 2001.  Indeed, it is undisputed that Clark suffered from serious depression and anxiety.  Moreover, there is evidence that Clark was disabled at least by September 2004, due to nonexertional limitations.  The record, however, does not reveal when those impairments became disabling.  While it appears Clark was disabled by 2004, that was not necessarily the date on which she first became disabled.  After reviewing the record, the court

finds that the date of onset is unclear and therefore the case should be remanded so that the ALJ may call a medical expert before inferring that the onset date did not occur prior to December 31, 2001.

## II.  ALJ Duty to Develop the Record

Next, Clark challenges the ALJ's failure to fully develop the record.  According to Clark, the ALJ and Dr. Nance, the medical expert, agreed at the hearing that the record was "meager" and needed further development.  Clark argues that despite agreeing with Dr. Nance's assessment that the record contained significant gaps in evidence, the ALJ proceeded to make a decision.  Clark insists that the absence of evidence may not constitute substantial evidence.

In social security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that claimant's interests are considered, even when claimant is represented by counsel.  <u>See</u> Social Security Act, § 1 et seq., <u>as amended</u>, 42 U.S.C.A. § 301 et seq.  The ALJ's duty to develop the record further in social security disability case is triggered when there is ambiguous evidence, or when the record is inadequate to allow for proper evaluation of evidence.  <u>Id</u>.  This duty derives in part from the basic premise that disability hearings are not adversarial in nature.  <u>See</u> <u>Sims v. Apfel</u>, 530 U.S. 103, 110-111 (2000). It is also based on the regulatory directive that, in an administrative

hearing, the ALJ "looks fully into the issues." 20 C.F.R. §§ 404.944 and 416.1444.

As part of this duty, the ALJ has an obligation to take reasonable steps to ensure that issues and questions raised by medical evidence, particularly evidence from treating physicians, are addressed so that the disability determination is fairly made on a sufficient record of information, both favorable and unfavorable to the claimant. See generally Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999); see also 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3)(providing steps to obtain additional evidence where medical evidence is insufficient to determine whether claimant is disabled); 20 C.F.R. §§ 404.1512(e), 416.912(e)(providing measures for obtaining additional information from treating doctors). Finally, where it is necessary to enable the ALJ to resolve an issue of disability, the duty to develop the record may require consulting a medical expert or ordering a consultative examination. See 20 C.F.R. §§ 404.1519a, 416.919a; see also Armstrong, 160 F.3d at 590 (Where there were diagnoses of mental disorders prior to the date of disability found by the ALJ, and evidence of those disorders even prior to the diagnoses, the ALJ was required to call a medical expert to assist in determining when the plaintiff's impairments became disabling.).

Prior to rendering his opinion of Clark's mental impairments through the date of last insured, Dr. Nance stated:

A.   Yes, Your Honor.  **Can I first make a statement about the
     sufficiency of the evidence?**

Q.   Sure.  Go ahead.

A.   **I think it's very hard to render an objective opinion
     based upon the file in front of me.**  There are no
     independent psychological evaluations.  There is a couple
     of reports, but don't meet the Social Security criteria
     in terms of --

Q.   Testing, that sort of --

A.   -- levels of expertise and objective evidence and so on.

Q.   Well, you don't -- in other words, you don't have any
     psychological evaluations or psychological testing?  We
     do have just the treating psychiatrist, but there's no
     testing?

A.   Yes, we have a report --

Q.   And he's primarily the medication manager in these --

A.   Right.

Q.   -- instances?

A.   We have a report by a master's degree person at page 53
     through 51, Karen Keller, MA [phonetic], which is an
     intake form --

Q.   Right.

A.   -- for West Salem Clinic.  There is a mental status
     examination and then Dr. [Suckow] has also done some
     mental status, which is objective to some degree. But
     it's by a treating source and it doesn't have the
     testing.  So I would be perfectly willing to proceed, but
     **I just want to point out that in my opinion there's a
     lack of sufficiency.**

Q.   Okay.

(Emphasis added).

In addition, the ALJ acknowledged the paucity of evidence. In his written decision the ALJ commented, at various points, on the insufficiency of the record as follows:

- "To assist me in analyzing Ms. Clark's mental problems, I enlisted the aid of Dr. Nance, the medical expert at the hearing. However, Dr. Nance found it difficult to evaluate claimant's mental problems during the relevant period until her last insured ate because her records are insufficient."

- "However, based on the meager record . . . ."

- "I agree with Dr. Nance's observations as to the significant 'holes' in this record, and the problems presented by the absence of objective testing during the relevant period."

- "There is very little evidence in Ms. Clark's file to support her claims and, what evidence exists, cannot be found fully credible because of the lack of objective evidence."

The Commissioner insists that the ALJ was able to make a determination here because Dr. Nance's opinion was in accordance with the evidence of record. The difficulty with that argument is that both parties agree that the record was "meager" and lacked objective evidence. The ALJ rejected Clark's account of her limitations because there was not objective evidence in support. Yet the ALJ was willing to accept Dr. Nance's assessment of Clark's limitations in the absence of objective evidence, even after Dr. Nance expressly stated that evaluation would be difficult because there was insufficient medical evidence and no objective test results.

The situation here is similar to that in <u>Tonapetyan v. Halter</u>, 242 F.3d 1144 (9th Cir. 2001), in which the testifying medical expert repeatedly stated that a more detailed record was necessary. The court in <u>Tonapetyan</u> concluded that "the ALJ was not free to ignore [the testifying doctor's] equivocations and his concern over the lack of a complete record upon which to assess [claimant's] mental impairment." <u>Id</u>. at 1150-1151. Here, the ALJ could have either accepted Dr. Suckow's assessments, ordered further evaluation, or contacted Dr. Suckow for clarification of his conclusions and the basis for them. <u>See</u> <u>Reed v. Massanari</u>, 270 F.3d 838, 841-842 (9th Cir. 2001); <u>see</u> <u>also</u> 20 C.F.R. §§ 404.1519a(b)(1), (4), 416.912(e), 416.919a(b)(1), (4).

After reviewing the record, the court finds that the ALJ's duty to fully develop the record was triggered here because the evidence was insufficient to allow for proper evaluation. Under the circumstances, the ALJ had a duty to request a consultative examination. <u>See</u> 20 C.F.R. § 404.1519a(b). There is insufficient evidence for determination of whether Clark was disabled prior to her date last insured and therefore the case should be remanded so that the ALJ may develop the record.

**III. Treating Physician Testimony**

Clark contends the ALJ improperly assessed the opinion of George Suckow, M.D., her treating psychiatrist since July 1, 1999.

Dr. Suckow had seen Clark at least twenty-six times prior to the November 2003 hearing.

The weight attributable to the opinion of a medical source depends, in part, on the relationship between the physician and the claimant. Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than that of a physician who did not examine the claimant but formed an opinion based on a review of the claimant's medical records. Holohan v. Massanari, 246 F.3d 1195, 1201-1202 (9th Cir. 2001).

The ALJ can reject a treating or examining physician's opinion that is inconsistent with the opinions of other treating or examining physicians, if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). An uncontradicted opinion may be rejected only for clear and convincing reasons. Thomas, 278 F.3d at 956-957.

The opinion of a non-examining physician by itself does not constitute substantial evidence to reject the opinion of a treating or examining physician. Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996). It may constitute substantial evidence if it is consistent with other evidence in the record. Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989).

In July 1999, Dr. Suckow evaluated Clark for treatment with antidepressants. Following his interview with Clark, Dr. Suckow diagnosed Clark as suffering from dysthymia r/o, major depression and substance abuse by history. Dr. Suckow determined Clark's Global Assessment of Functioning at 60.[3] Three weeks later, Dr. Suckow again evaluated Clark. At that time, he added anxiety disorder to her list of conditions and determined her GAF at 45, which indicates "serious impairment in social, occupational, or school functioning (e.g. no friend, unable to keep a job)." American Psychiatric Association, <u>Diagnostic and Statistical Manual</u>, 34 (4th ed. 2000).

Dr. Suckow continued to evaluate Clark almost monthly for the next several months and his assessment of her GAF during that time remained at 45. In March 2000, Dr. Suckow noted that "[Clark] is not doing very well in the sense that she just can't seem to stay stable. She is very anxious around people and has applied for disability. She doesn't think she is capable of working any longer. . . . I think that it appears to me that we should support

---

[3] The GAF is the clinician's judgment of the individual's overall level of functioning, but it does not include impairment and functioning due to physical or environmental limitations. <u>Diagnostic Statistical Manual of Mental Disorders</u>, 32 (4th ed. 2000). A score of 41-50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." (emphasis omitted). <u>Id</u>. at 34 A rating of 55 is in the middle of the category which describes moderate symptoms or moderate difficulty in social, occupational, or social functioning. <u>Id</u>.

that." After listing the five different medications taken by Clark, Dr. Suckow noted that "[w]ith all of those [medications] she can keep her depression and some of her anxiety under control but she doesn't really deal well with the public. And I don't think would have the stamina or the persistence to be employed."

Clark continued to see Dr. Suckow every couple months for medication management through her date of last insured. Generally, throughout that period of time, Dr. Suckow assessed Clark's GAF at 45 and diagnosed her with depression.

The medical record also includes a report from Karen Keller, M.A., authorized by a psychiatrist, dated June 16, 1999. The report -- an intake assessment -- followed a referral for counseling services. Keller noted that Clark presented as follows:

> [Clark] is very depressed. She cries frequently, has been throwing up, is not sleeping well, either eats too much or not at all, and thinks about dying daily. She has no plan to take her life and said she wouldn't do that. She said she has been depressed "all my life", but has not been this down since her son died years ago. She has no job, no money, no car, and no friends.

Keller provided a tentative Axis I diagnosis of "Major Depression, recurrent (296.33); Alcohol Dependence (303.90)" and assessed Clark's GAF at 45.

The ALJ gave Dr. Suckow's little weight. In rejecting Dr. Suckow's assessments of Clark the ALJ stated:

> There has been no testing done by Dr. Suckow or any other physician. Claimant also has not been independently evaluated by psychologists who would have administered psychological testing. . . .

Again, however, there has been no testing done in this area to support the opinions of Dr. Suckow, except for some mental status testing. . . .

Even Dr. Suckow state that with all the medications the claimant was taking, she would be able to keep her depression and some of her anxiety under control. . . .

Ms. Clark only sees Dr. Suckow every couple of months, and does not engage in counseling any longer, not since 1999. . . .

I also took under consideration the statements of Dr. Suckow who began seeing the claimant in June 1999. He always gave claimant the same GAF (45), and never changed it. He stated on several occasions that the claimant is disabled and unable to perform any work. Yet, Dr. Suckow did not conduct any testing of the claimant's mental abilities. I have considered his reports, but they contain few objective findings and little, if any testing, as noted by Dr. Nance. . . .

The ALJ has not met his burden here. There is no suggestion that Clark was malingering and there is medical evidence of impairment consistent with Clark's limitations. To the extent Dr. Nance's assessment of Clark based on the "meager" record conflicted with that of Dr. Suckow and Keller, M.A., Dr. Nance's opinion, by itself, does not constitute substantial evidence. Moreover, it is unclear from this record whether Dr. Nance disagreed with Dr. Suckow or, rather, could not find support for Dr. Suckow's assessment based on the insufficient record. Even assuming that Dr. Nance's opinion was inconsistent with that of Dr. Suckow's, the ALJ can reject a treating physician's opinion only if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.

On the record before the court, it is unclear how the ALJ could have determined that Dr. Nance's opinion, based upon an acknowledged insufficient record, was owed greater deference than that of a treating physician that had a several-year relationship with Clark and had seen her over 25 times. Unlike Dr. Nance, Dr. Suckow had a treatment relationship with Clark and a working relationship with her therapists, he had performed psychiatric examinations, he had seen her more frequently and he possessed specialized expertise in psychiatry. The ALJ's conclusion that Dr. Nance's opinion was entitled to greater weight than that of Dr. Suckow's is puzzling and not supported by substantial evidence. Accordingly, the case should be remanded so that the ALJ may properly order a consultative examination and assess the opinion of Dr. Suckow.

## CONCLUSION

Based on the foregoing, the decision of the Commissioner should be REVERSED AND REMANDED for further proceedings. Accordingly, Clark's complaint (doc. #1) should be DISMISSED and all other motions should be DENIED as moot.

Dated this  16  day of November 2005.


  /s/ Donald C. Ashmanskas
       Donald C. Ashmanskas
   United States Magistrate Judge

**SCHEDULING ORDER**

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due December 2, 2005.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.